[Cite as *L.G. Harris Family Ltd. Partnership I v. 905 S. Main St. Englewood, L.L.C.*, 2016-Ohio-7242.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| L.G. HARRIS FAMILY LIMITED PARTNERSHIP I | : | |
| | : | |
| | : | Appellate Case No. 26682 |
| *Plaintiff-Appellant/Cross-Appellee* | : | |
| | : | Trial Court Case No. 2009-CV-9692 |
| | : | |
| v. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| 905 S. MAIN STREET ENGLEWOOD, LLC | : | |
| | : | |
| *Defendant-Appellee/Cross-Appellant* | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of October, 2016.

. . . . . . . . . . .

RICHARD A. BOUCHER, Atty. Reg. No. 0033614, JULIA C. KOLBER, Atty. Reg. No. 0078855, 12 West Monument Avenue, Suite 200, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant/Cross-Appellee

THOMAS L. CZECHOWSKI, Atty. Reg. No. 0022973, 1 South Main Street, Suite 1300, Dayton, Ohio 45402
    Attorney for Defendant-Appellee/Cross-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Plaintiff-Appellant, L.G. Harris Family Limited Partnership I ("Harris"), appeals from a judgment dismissing its action against Defendant-Appellee and Cross-Appellant, 905 South Main Street Englewood, L.L.C. ("SMS"), with prejudice. SMS cross-appeals from a judgment that it was not the prevailing party in the action and was not entitled to attorney fees.

**{¶ 2}** In support of its appeal, Harris contends that the trial court erred in failing to provide it with a hearing on nominal damages. Harris also contends that the trial court should have found that Harris was the prevailing party for purposes of attorney fees, based on our prior finding that SMS had breached the contract between the parties. In addition, Harris contends that the trial court erred by vacating, on its own motion, an agreed entry as to attorney fees, and by ordering that Harris pay one-half of the court costs.

**{¶ 3}** Conversely, SMS contends that the trial court erred in finding that SMS was not the prevailing party and was not entitled to attorney fees, costs, and expenses. SMS further contends that the court erred in ordering SMS to pay one-half of the court costs.

**{¶ 4}** We conclude that the trial court failed to properly follow our mandate on remand with respect to the content of the judgment entry. However, the trial court did not err in denying a hearing on nominal damages, nor did the court err in its findings with respect to prevailing party status and costs. Accordingly, Harris's First Assignment of Error will be sustained in part and overruled in part, and the remaining assignments of error as well as the cross-assignments of error will be overruled. The judgment entry filed on April 20, 2015, will be vacated, and the trial court will be ordered, on remand, to enter

judgment as directed by this opinion.


## I. Facts and Course of Proceedings

{¶ 5} In November 2009, Harris filed a complaint against SMS based on a common access easement and parking maintenance agreement that the parties had executed in 2003. The complaint alleged claims for breach of contract, trespass, malicious interference with property rights, and attorney fees. In addition to damages, Harris requested termination of the easement agreement and injunctive relief ordering SMS to reinstall a curb cut and driveway that had been eliminated after the easement agreement was signed.

{¶ 6} In January 2010, SMS filed an answer and counterclaim, alleging that Harris had breached the agreement. SMS also asked for damages and attorney fees. Following a prolonged litigation history, which included the filing of three motions for summary judgment by SMS, the case was tried before a jury in April 2013. The jury concluded that SMS had breached the contract in two respects, and awarded Harris $302,800 in damages. Jury interrogatories indicated that the award included $160,000 for loss of use damages, and $142,800 for expectation damages.

{¶ 7} After SMS appealed, we dismissed the appeal for lack of a final appealable order, because the attorney fee issue had not yet been resolved. *See L.G. Harris Family Ltd. Partnership I v. 905 S. Main St. Englewood Ohio L.L.C.*, 2d Dist. Montgomery No. 25735 (June 18, 2013) (*Harris I*).

{¶ 8} On July 29, 2013, the parties filed an agreed judgment entry, awarding Harris $106,299.20 in attorney fees from September 30, 2009 to June 26, 2013, plus costs and

expenses of $13,059.77, for a total award of $119,358.97. SMS then filed another notice of appeal, gave notice that it was filing a partial transcript, and presented nine assignments of error.

{¶ 9} In May 2014, we issued an opinion overruling the first, second, third, fourth, fifth, and sixth assignments of error, which pertained to the jury's verdict on the breach of contract claims. *L.G. Harris Family Ltd. Partnership I v. 905 S. Main St./Englewood, L.L.C.*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, ¶ 31-54 (*Harris II*). However, we sustained the sixth, seventh, and eighth assignments of error, which pertained to the jury's award of damages. These assignments of error included the contention that the trial court should have directed a verdict on the issue of damages. *Id.* at ¶ 55-84.

{¶ 10} As recounted in our 2014 opinion, the general background giving rise to the lawsuit was as follows:

For many years, Harris owned adjacent properties at 909 and 905 South Main Street (Route 48) in Englewood and operated manufacturing facilities on the properties. Both properties are on the west side of Route 48, and the 905 parcel is north of 909. Two buildings had been erected on the 909 property and one on the 905 property. When the properties were used for the manufacturing operation, semi-trailer trucks accessed the loading dock at the rear of one of the buildings on the 909 parcel via the northernmost of three driveways on that property off of Route 48, the one closest to the 905 parcel.

By the early 2000s, the manufacturing operation had ceased, and Harris had sold the 909 parcel to Michael Howell on land contract. Howell

operated an auto body shop and towing business at that location. The building on the 905 parcel was in a state of disrepair, with a partially collapsed roof, and the City of Englewood apparently considered it a nuisance. The City initiated discussions with Harris about possibly rezoning the property for development as a restaurant or other commercial venture, which would eliminate the need for Harris to abate the nuisance the property presented. Harris agreed to proceed with this plan.

In approximately 2003, the zoning of the 905 parcel was changed; Harris sold the property to SMS, which planned to build a Tim Horton's restaurant and other retail or restaurant establishments on the property. (Eventually, the development included Penn Station and BW3 restaurants and a UPS Store, in addition to the Tim Horton's.)

Shortly after the sale, SMS sought an easement from Harris to permit additional parking and access for its 905 property. The easement area consisted of a portion of the 909 parcel adjoining the 905 parcel, near the road; the easement area encompassed approximately half an acre, including the northernmost driveway permitting ingress and egress to the 909 parcel. Harris consented to the easement, and the parties signed the Common Access Easement and Parking Maintenance Agreement.

The easement stated that it was for "ingress, egress, and parking," and it contained several provisions that are pertinent to this appeal. During the "initial construction," SMS had the right to configure the easement area for parking and access, including "all ordinary and necessary repairs,

maintenance, and replacements." All repairs, maintenance and replacements were required to "be completed in compliance with applicable laws, ordinances, rules and regulations," and SMS bore the costs of these changes. Thereafter, "all costs to repair, maintain or replace the Easement Area" were to be shared by the parties equally. Either party intending to make any modification was required to notify the other party in writing, including the estimated cost and attaching two "competitive bids from vendors." The other party had ten days to object, or it would be deemed to have approved. If the other party did object, the party proposing the modification could 1) proceed at its own expense or 2) obtain new bids and resubmit the request.

In 2003 or 2004, SMS submitted a plan for its proposed development to the City as part of an application for a conditional use permit. The proposed plan included an access point through the easement area, where a driveway was already located, and a second driveway further north on the 905 property. When the City's traffic engineer reviewed the proposed development, however, he concluded that the location of the driveway in the easement area (at the same location as a then-existing driveway) posed a potential traffic hazard; the driveway to another restaurant was located directly across Route 48 from the proposed entrance to the 905 development, which would have required traffic coming from opposite directions on Route 48 to share a center turn lane and created a danger of collisions. The traffic engineer recommended that the driveway through

the easement area be moved and that the two proposed entries be combined into one. The City approved the development plan subject to the recommendations of the traffic engineer.

In 2004, SMS made its initial modifications to the easement area, including paving portions of it for parking and installing a retaining wall at the rear edge of the parking area. As part of its development, and in keeping with the traffic engineer's recommendation, SMS also created a single driveway on the 905 property and removed the driveway (or "curb cut") in the easement area on the 909 property.

For several years after the driveway was moved, until approximately 2008, Howell continued to operate his auto body shop on the 909 property. However, in November 2009, after Howell's business closed and the land contract terminated, Harris filed suit against SMS based on its relocation of the driveway, contending that the removal of the original curb cut and driveway precluded semi-trailer access to the 909 property and diminished that property's value.

*Harris II*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, at ¶ 3-10.

**{¶ 11}** After overruling six assignments of error and sustaining three assignments of error, we stated that:

The jury's findings that SMS breached its contract with Harris will be affirmed, but its awards of damages will be reversed. The matter will be remanded to the trial court for entry of a judgment consistent with this opinion.

*Id.* at ¶ 85.

**{¶ 12}** We also filed a final entry on May 5, 2014, stating that:

> Pursuant to the opinion of this court rendered on the 5th of May, 2014, the jury's findings that SMS breached its contract with Harris are affirmed, but its awards of damages are reversed. The matter is remanded to the trial court for entry of a judgment consistent with this court's opinion.

**{¶ 13}** Harris filed an application for reconsideration and clarification, which we overruled in July 2014. *See L.G. Harris Family Ltd. Partnership I v. 905 S. Main St. Englewood, L.L.C.*, 2d Dist. Montgomery No. 25871 (July 1, 2014) (*Harris III*). In the decision, we initially rejected Harris's argument that evidence in the record supported the jury's award of damages. We noted that this argument was a disagreement with our opinion, rather than an obvious error or an issue that we failed to fully consider. *Id.* at p. 2.

**{¶ 14}** Next, we rejected Harris's argument about our failure to consider the testimony of two witnesses. In this regard, we noted that SMS had asked for only a partial transcript, and that Harris failed to timely request transcription of additional parts of the record. *Id.* at p. 2-4. In particular, we stressed that SMS had complied with the requirements of App.R. 9(B). *Id.* at p. 4.

**{¶ 15}** Harris also argued that it was entitled to nominal damages and that it was the "prevailing party" for purposes of attorney fees. We expressed no opinion about these arguments, but noted that:

> Harris should raise that issue [nominal damages] in the trial court in the first instance, as well as the question of whether the parties' agreement

with respect to payment of fees (e.g., the meaning of the term "prevailing

party" as used in the easement) is dependent upon an award of damages.

*Id.* at p. 5.

**{¶ 16}** Finally, concerning the request for clarification, Harris asked us to explain ¶ 85 of our opinion, which, as noted, affirmed the findings as to breach of contract, but reversed the award of damages. In this vein, we commented that:

We acknowledge that judicial opinions, almost by definition, are often subject to different interpretations; however in our view, our holding with respect to compensatory damages, which encompasses expectation damages, was clear. We can only rule on assignments of error; issues that were not previously raised by the parties or decided by this court should be addressed, in the first instance, in the trial court.

*Harris III*, 2d Dist. Montgomery No. 25871 (July 1, 2014), at p. 5-6.

**{¶ 17}** Harris did not appeal from our decision to the Supreme Court of Ohio. Subsequently, both sides filed various pleadings in the trial court concerning the effect of our judgment as well as a proposed judgment entry that SMS had filed. In late August 2014, the trial court held a hearing, during which the parties and court expressed disagreement and some confusion over the meaning of our opinion and our decision on reconsideration. *See* Transcript of Proceedings, August 22, 2014 Hearing, pp. 4-42. At the end of the hearing, the judge (who had previously presided over the jury trial) indicated she would attempt to issue a decision shortly. However, that never occurred. As a result, a different judge, who had been elected to the same judicial seat, held another hearing in March 2015. The parties then again presented argument to the judge.

Transcript of Proceedings, March 27, 2015 Hearing, pp. 52-72. No evidence was taken at either hearing.

{¶ 18} On April 15, 2015, the trial court issued an order denying Harris's request for a new trial on nominal damages. The court also held that neither party was a "prevailing party" for purposes of the contractual agreement to pay attorney fees and costs. The court, therefore, filed a judgment entry on April 20, 2015, vacating the Agreed Entry filed on July 29, 2013. In addition, the court dismissed the action with prejudice.

{¶ 19} Harris filed a notice of appeal on May 11, 2015, and SMS followed by filing its notice of cross-appeal on May 14, 2015. With this background in mind, we will now consider the assignments and cross-assignments of error.

II. Did the Trial Court Err in Vacating the Attorney Fee Judgment and in Dismissing the Action with Prejudice?

{¶ 20} Harris's First Assignment of Error states that:

The Trial Court Erred in Vacating the Judgment Entry Filed April 24, 2013 and Dismissing This Action With Prejudice.

{¶ 21} Under this assignment of error, Harris contends that the action should not have been dismissed with prejudice. Initially, Harris argues that it established both breach of contract and damages. Harris also contends that that the trial court exceeded our mandate by vacating the April 24, 2013 judgment entry and by dismissing the case in its entirety with prejudice.

{¶ 22} In its decision, the trial court concluded that it was required to take up the case where the error first occurred. The court decided this was at the end of Harris's

case, when the court had denied SMS's motion for directed verdict. The trial court did not explicitly give this as its reason for dismissing the case with prejudice; instead, this was the reason the court gave for denying a new trial on damages. Doc. #31, April 15, 2015 Order Denying Attorney Fees and Request for New Trial on Damages, p. 2.

{¶ 23} "When an appellate court issues a decision that reverses a judgment or order of a trial court, the appellate court issues a mandate to the trial court to act in conformity with the ruling on appeal. It is the responsibility of the trial court to enter the judgment or order as directed by the mandate of the reviewing court." *Bridge v. Park Natl. Bank*, 169 Ohio App.3d 384, 2006-Ohio-5691, 863 N.E.2d 180, ¶ 18 (10th Dist.). "A mandate is not a mere suggestion or request, it is a command or order which the issuing court has authority to give, and the receiving court is bound to obey. It directs what action is to be taken." *First Bank of Marietta v. Roslovic & Partners, Inc.*, 138 Ohio App.3d 533, 539, 741 N.E.2d 917 (10th Dist.2000).

{¶ 24} The Supreme Court of Ohio has said that:

It is basic law that an "action of the Court of Appeals in reversing the cause and remanding the case to the Court of Common Pleas for further proceedings has the effect of reinstating the cause to the Court of Common Pleas in statu quo ante. The cause is reinstated on the docket of the court below in precisely the same condition that obtained before the action that resulted in the appeal and reversal." (Emphasis added.) 5 Ohio Jurisprudence 3d (1978) 426, Appellate Review, Section 717. Furthermore, this court has specifically held that upon remand from an appellate court the lower court is required to proceed from the point at which

the error occurred.

*Armstrong v. Marathon Oil Co.*, 32 Ohio St.3d 397, 418, 513 N.E.2d 776 (1987), citing *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982).

{¶ 25} As a result, the trial court was generally correct in its belief about its duties on remand. However, we did not reverse the case and remand for further proceedings. In *Armstrong*, the action in question had been filed by shareholders who dissented from a merger between Marathon Petroleum Company and a subsidiary of United States Steel Corporation. *Id.* at 398. In the initial part of the proceedings, the trial court found certain shareholders ineligible to participate. This decision was reversed by the court of appeals and the case was remanded to the trial court. *Id.* at 400. Following the remand, the trial court refused to grant a continuance so that a trustee for a number of the shareholders could use the discovery of other plaintiffs to prepare for trial. *Id.* On remand, the trial court also held a hearing and determined the value of the stock. *Id.* at 401.

{¶ 26} On further appeal, the court of appeals reversed the trial court again, based on its failure to let the trustee conduct discovery. *Id.* at 400. The court of appeals also reversed the trial court's decision on the stock value. *Id.* at 401.

{¶ 27} Subsequently, the Supreme Court of Ohio held that the court of appeals had used the wrong analysis for valuing the stock, and remanded the case to the trial court for a limited decision on "what appreciation or depreciation, if any, existed due to the U.S. Steel proposal submitted to the Marathon shareholders." *Armstrong*, 32 Ohio St.3d at 413, 513 N.E.2d 776. The court also held that the trial court had abused its discretion in denying a continuance to the trustee, who had been reinstated to the case after the first decision of the court of appeals. *Id.* at 417-418. The court held that as a

result, the trustee should have been entitled to a reasonable discovery period on the remand. At that point, the Supreme Court of Ohio made the comments noted above, about the fact that on remand, a lower court must proceed from the point where the error occurred. *Id.* at 418. The court, therefore, ordered that the trustee would have time to engage in limited discovery on remand. *Id*. at 419.

{¶ 28} This type of situation is not present in the case before us. Rather than reversing the case and remanding for further proceedings, we directed the trial court to enter judgment consistent with the following statement: "the jury's findings that SMS breached its contract with Harris are affirmed, but its awards of damages are reversed * * *." Based on our directions about entering judgment, the trial court was not entitled to proceed from the point where the alleged error occurred, and to dismiss the case in its entirety with prejudice.

{¶ 29} App.R. 12(A)(1) provides that "[o]n an undismissed appeal from a trial court, a court of appeals shall do all of the following: (a) Review and affirm, modify, or reverse the judgment or final order appealed * * *." App.R. 12 further provides that:

> (B) Judgment as a Matter of Law. * * * When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, *or remand the cause to the court with instructions to render such judgment or final order.* In all other cases where the court of appeals determines that the judgment or final order of the trial

court should be modified as a matter of law it shall enter its judgment accordingly.

* * *

(D) All Other Cases. In all other cases where the court of appeals finds error prejudicial to the appellant, the judgment or final order of the trial court shall be reversed and the cause shall be remanded to the trial court for further proceedings.

(Emphasis added.)  *Id.*

**{¶ 30}** Because our mandate ordered the trial court to enter judgment consistent with our findings, the trial court should have incorporated our findings into the final judgment entry and should not have proceeded from where the error allegedly occurred, in order to dismiss the entire case with prejudice.   As a result, the trial court erred in this regard.

**{¶ 31}** Although a trial court may not deviate from a mandate, it is permitted to hear and decide facts requiring resolution based on the mandate.   *First Bank of Marietta*, 138 Ohio App.3d at 539, 741 N.E.2d 917, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

**{¶ 32}** In the case before us, the only aspect of the judgment under appeal that was left for resolution was the issue of attorney fees.   Harris discusses this point primarily in connection with the Fourth Assignment of Error, and we will defer our discussion of this point until we consider that assignment of error.

**{¶ 33}** Based on the preceding discussion, the First Assignment of Error is sustained, insofar as it contends that the trial court erred in following our mandate.   This

matter will be reversed and remanded so that the trial court may enter a judgment that is consistent with our mandate.

III.   Did the Court Err in Failing to Hold that Plaintiff Was the Prevailing Party?

{¶ 34} Harris's Second Assignment of Error states that:

The Trial Court Erred in Failing to Determine that Plaintiff-Appellant Was the Prevailing Party Based Upon this Court's Previous Affirmation of the Jury's Finding of a Breach of Contract.

{¶ 35} Under this assignment of error, Harris contends that the trial court should have held that it was the prevailing party for purposes of an attorney fee award, based on our prior holding that SMS breached the contract between the parties.   In response, SMS argues that Harris is not the prevailing party because it failed to obtain damages as a result of the breach.   Under this same theory, SMS contends in its First Cross-Assignment of error that the trial court should have declared it the prevailing party and should have awarded SMS attorney fees.

{¶ 36} "Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees * * *." (Citations omitted.)   *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.   "When the right to recover attorney fees arises from a stipulation in a contract, the rationale permitting recovery is the 'fundamental right to contract freely with the expectation that the terms of the contract will be enforced.' "   *Id.* at ¶ 8, quoting *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987).

{¶ 37} Normally, decisions on attorney fee awards are reviewed for abuse of discretion. *Clean Wood Recycling, Inc. v. Tony's Landscaping, Inc.*, 6th Dist. Lucas No. L-14-1074, 2014-Ohio-5280, ¶ 13. (Citation omitted.) However, where a trial court's error in failing to enforce a fee agreement is based on contract interpretation, the decision is subject to de novo review. *Id.* (Citations omitted.) *See also Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 23 (8th Dist.) (noting that while an "award of attorney fees is subject to an abuse-of-discretion standard, the determination of a plaintiff as the prevailing party is subject to a de novo standard.")

{¶ 38} The Common Access Easement and Parking Maintenance Agreement that the parties signed contains the following provision in paragraph 11:

> In the event of the bringing of any action or suit by either party against the other arising out of this Agreement, the prevailing party shall be entitled to recover from the other party, in addition to any other relief that may be granted, all costs and expenses of suit, including reasonable attorney fees.

Ex. C attached to the Complaint, p. 2.

{¶ 39} In denying attorney fees, the trial court concluded that neither party was a "prevailing party" since Harris succeeded on its claim for breach, and SMS prevailed on the damages claim. The court also considered federal law in connection with Harris' position that it would be considered a prevailing party if recovery of nominal damages were allowed.

{¶ 40} In the context of civil rights plaintiffs, the United States Supreme Court has said that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment

against the defendant from whom fees are sought, * * * or comparable relief through a consent decree or settlement * * *. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. * * * In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." (Citations omitted.) *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

{¶ 41} In *Farrar*, the court held that "a plaintiff who wins nominal damages is a prevailing party under § 1983. When a court awards nominal damages, it neither enters judgment for defendant on the merits nor declares the defendant's legal immunity to suit. * * * A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 112.

{¶ 42} Attorney fee awards, even in situations involving nominal damages, are deemed appropriate in civil rights actions due to the need to vindicate a plaintiff's " 'absolute' right to procedural due process through enforcement of a judgment against the defendant." *Id.* at 115, quoting *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The same considerations would not necessarily apply to breach of contract actions, where the parties have freely entered into an agreement providing for attorney fees. In such instances, there is no significant right to vindicate. Nonetheless, Harris did not achieve even an award of nominal damages. We understand that Harris's argument is that it was entitled to establish nominal damages, and we will address that issue later.

{¶ 43} In a case that has been cited by both parties, we discussed the meaning of prevailing party in the context of Civ.R. 54(D), which allows costs to be awarded to a "prevailing party," but does not define the term. *Woodfork v. Jones*, 2d Dist. Montgomery No. 15841, 1997 WL 71820, *6 (Feb. 21, 1997). We noted that Black's Law Dictionary had defined a prevailing party as:

> "The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered. * * * This may be the party prevailing in interest, and not necessarily the prevailing person. To be such does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, or other proceeding, the party who had made a claim against the other, has successfully maintained it.
>
> As used in Federal Civil Procedure Rule 54(d), which provides that costs shall be allowed as of course to [the] prevailing party unless [the] court otherwise directs, 'prevailing party' means a party who has obtained some relief in an action, even if that party has not sustained all of his or her claims."

*Id.* at *6-7, quoting Black's Law Dictionary 1188 (6 Ed. Rev.1990).

{¶ 44} In the context of costs, the Supreme Court of Ohio has also said that "[d]enying costs to both parties can be appropriate when neither party entirely prevails." (Citations omitted.) *State ex rel. Reyna v. Natalucci-Persichetti*, 83 Ohio St.3d 194, 198,

699 N.E.2d 76 (1998).

{¶ 45} Although each side contends that it is the prevailing party in this case, we conclude that the trial court did not abuse its discretion in denying prevailing party status to either party. In this regard, we note that Harris has argued in this appeal, that it did, in fact, prove damages at trial (meaning that our decision in *Harris II* was incorrect). In addition, Harris argues, as was noted, that it was the prevailing party because it was entitled to nominal damages, or at the least, to prove nominal damages on remand.

{¶ 46} In *Harris II*, we stated, concerning the first two assignments of error, that:

The trial court did not err in denying SMS's motion for summary judgment based on impossibility of performance, and the jury's implicit finding that SMS had breached the contract notwithstanding the City's approval of the plan with a relocated driveway was not against the weight of the evidence.

*Harris II*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, at ¶ 39.

{¶ 47} Regarding the Third and Fourth Assignments of Error, we found that the trial court did not err in overruling SMS's motion for a directed verdict on Harris's second breach of contract claim, and that the jury's verdict on this claim was not against the manifest weight of the evidence. *Id.* at ¶ 42-46. In this claim, Harris had "asserted that the removal and/or relocation of the driveway in the easement area violated the parties' easement agreement." *Id.* at ¶ 42. After noting the claim, we stated that:

" 'The essential elements of a cause of action for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant and resulting damage to the plaintiff.' "

*Id.* at ¶ 43, quoting *Winner Brothers, L.L.C. v. Seitz Elec., Inc.*, 182 Ohio App.3d 388, 2009–Ohio–2316, 912 N.E.2d 1180, ¶ 31 (2d Dist.). (Other citations omitted.)

**{¶ 48}** After discussing the facts, which revealed a genuine dispute about the terms and scope of the agreement, we stated that:

> These factual issues were properly resolved by the jury, rather than on directed verdict. The jury's conclusions that the relocation of the driveway had not been contemplated by the easement *and that Harris had been harmed thereby* were not against the manifest weight of the evidence.

(Emphasis added.) *Id.* at ¶ 46.

**{¶ 49}** Concerning the Fifth and Sixth Assignments of Error, which involved a second contract claim based on SMS's alleged failure to provide notice of the proposed reconfiguration of the access point, we found, again, that the trial court did not err in denying the motion for directed verdict on this issue. We also found that the jury's verdict on this issue was not against the manifest weight of the evidence. *Id.* at ¶ 49-54.

**{¶ 50}** Inherent in these holdings, and directly stated in our comments about the Third and Fourth Assignments of Error, is that Harris satisfied the requirements for establishing a breach of contract, which included that Harris was damaged by the breach. Unfortunately, these holdings are internally inconsistent with our conclusions regarding the final three assignments of error, and most specifically with the resolution of the Ninth Assignment of Error. These three assignments of error involved SMS's contention that the trial court erred in instructing the jury on expectation damages; that the jury improperly awarded loss of use and expectation damages; and that the trial court erred by overruling SMS's motion for directed verdict on damages. *Harris II*, 2d Dist. Montgomery No.

25871, 2014-Ohio-1906, at ¶ 55.  Our reconsideration decision also introduced some possible confusion, by indicating that the issue of nominal damages should be considered, in the first instance, in the trial court.  *Harris III*, 2d Dist. Montgomery No. 25871 (July 1, 2014), at p. 5.

**{¶ 51}** Nonetheless, we are bound by the doctrine of the law of the case, which "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."  (Citations omitted.)  *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410. "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. * * * However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution."  (Citations omitted.)  *Id*.

**{¶ 52}** The law of the case doctrine is subject to very limited exceptions.  One such exception is that "while a trial court cannot alter the law of the case as mandated by an appellate court, * * * an appellate court may choose to reexamine the law of the case it has itself previously created, if that is the only means to avoid injustice.  However, such reexaminations must not be undertaken lightly by an appellate court, nor encouraged as a common course of conduct for unsuccessful litigants."  (Citation omitted.)  *Weaver v. Motorists Mut. Ins. Co.*, 68 Ohio App.3d 547, 549, 589 N.E.2d 101 (2d Dist.1990). *Accord Olympic Title Ins. Co. v. Fifth Third Bank of W. Ohio*, 2d Dist. Montgomery No. 20145, 2004-Ohio-4795, ¶ 19; *Koss v. Kroger Co.*, 10th Dist. Franklin No. 07AP-450, 2008-Ohio-2696, ¶ 19; *Pavlides v. Niles Gun Show, Inc.*, 112 Ohio App.3d 609, 615, 679

N.E.2d 728 (5th Dist.1996).

{¶ 53} The Supreme Court of Ohio has also concluded that it need not apply the law of the case where "adherence to the doctrine * * * could result in this court's upholding an unconstitutional rule on account of being forced by the law of the case to apply the wrong analytic standard * * * [or] could result in this court's rendering a decision implying that these particular constitutional objections to DR 2–107(B) might be valid, only to postpone their resolution because a doctrine that we have chosen to apply prevents us from considering them." *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 46.

{¶ 54} Although our district and other courts, including the Supreme Court of Ohio, have recognized the ability to reexamine a prior decision in the same case, finding situations (other than *Shimko*) where that actually has occurred, is difficult. For example, we concluded in *Weaver* that our prior holding finding of no duty to defend was correct and did not result in an unjust result for the appellant. *Weaver* at 549. Likewise, in *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 90 Ohio App.3d 490, 629 N.E.2d 1373 (8th Dist.1993), the Eighth District Court of Appeals found no error in its prior decision, and applied the law of the case. *Id.* at 493. Even in *Shimko*, the court focused on improper constitutional holdings that could arise if the law of the case were applied.

{¶ 55} Re-examination was also rejected in *Norris v. Philander Chase Corp.*, 5th Dist. Knox No. 11-CA-10, 2011-Ohio-6545, based on the fact that the appellant was rehashing arguments the court had already rejected twice. *Id.* at ¶ 23. In another example, the Tenth District Court of Appeals rejected the appellant's request to depart from the law of the case. The court discussed its prior opinion and concluded that

applying it would not be inequitable. *Meeks v. Meeks*, 10th Dist. Franklin No. 06AP-1186, 2008-Ohio-2015, ¶ 22.

{¶ 56} In *Carr Supply, Inc. v. Rockford Homes, Inc.*, 10th Dist. Franklin No. 02AP-960, 2003-Ohio-4676, the plaintiff obtained judgment against a subcontractor in 1998, and then filed a garnishment action against the contractor. *Id.* at ¶ 2-3. After the trial court granted summary judgment to the plaintiff, the court of appeals reversed, concluding that the trial court should have considered whether the contractor failed to act in good faith when it responded to the notice of garnishment. *Id.* at ¶ 11. On remand to the trial court for a hearing, the trial court granted judgment in the contractor's favor, because the contractor had acted in good faith under R.C. 2716.21(F). *Id.* at ¶ 7-8.

{¶ 57} In the subsequent appeal by the plaintiff, the Tenth District Court of Appeals acknowledged that it had apparently erred in its initial decision, because the good-faith exemption in R.C. 2716.21(F) was not in effect when the plaintiff's claim arose. *Id.* at ¶ 11. Citing *Weaver* and other cases, the court of appeals concluded that it could re-examine the law of the case it had created, in order to prevent injustice. *Id.* at ¶ 19. However, the court disagreed with the plaintiff that an injustice had occurred, because the plaintiff failed to move for reconsideration after the initial appellate decision. *Id.* at ¶ 20. Accordingly, although the court of appeals acknowledged that it had erred in its prior decision, it affirmed the judgment of the trial court. *Id.*

{¶ 58} In the case before us, Harris did request reconsideration, which was denied. However, Harris did not then appeal to the Supreme Court of Ohio. In a similar situation, the Supreme Court of Ohio concluded that it would not be unjust to apply the law of the case. *See Hawley v. Ritley*, 35 Ohio St.3d 157, 519 N.E.2d 390 (1988).

{¶ 59} *Hawley* involved a written purchase agreement for the sale of commercial property, which was subject to an option of first refusal by a lessee that was not disclosed to the purchaser. *Id.* at 157. The seller brought an action for rescission, and the purchaser counterclaimed for breach of contract and misrepresentation. *Id.*

{¶ 60} At the first trial, the court ordered rescission of the agreement and merged the counterclaims. *Id.* The court of appeals reversed, and ordered the trial court to enter judgment in the purchaser's favor. However, the court of appeals refused to decide an assignment of error relating to the purchaser's claims for damages, because it had not been supported by briefing. *Id.* at 158. The purchaser filed a motion for reconsideration, but the court of appeals refused to reconsider its disposition of this assignment of error. *Id.* Neither party appealed further, and the matter was remanded to the trial court, which allowed the purchaser to file supplemental counterclaims relating to new events. *Id.* At the end of a second trial, a jury awarded the purchaser money damages for breach of contract. *Id.*

{¶ 61} On further appeal, the court of appeals reversed, holding that the trial court had exceeded the scope of its remand by allowing supplemental claims, and that it was also error for the trial court to consider the counterclaims, as they had been disposed of during the first appeal, which constituted the law of the case. *Hawley*, 35 Ohio St.3d at 158, 519 N.E.2d 390. The Supreme Court of Ohio subsequently affirmed the decision of the court of appeals, while noting that it was a "close question." *Id.* In this regard, the court stressed that:

Assuming, *arguendo*, that the first court of appeals did in fact abuse its discretion in ruling on appellant's sixth assignment of error as it did, the

glaring fact remains that the appellant failed to further appeal the first court of appeals' decision on the counterclaims issue before this court when he had a full and fair opportunity to do so. The proper time for appellant to have assailed the action of the first appellate court in dismissing the sixth assignment of error was immediately following the denial of the motion for reconsideration by the court of appeals. Given such a state of circumstances, we cannot find that appellant was denied his rights to due process during the course of these proceedings. Since appellant chose not to appeal the first appellate court's disposition on the assignment of error concerning the counterclaims, such a disposition ipso facto became the "law of the case," and the appellant must endure the consequences of not appealing that decision.

(Italics sic.) *Hawley* at 159-60.

{¶ 62} In the case before us, there would have been some authority for reversing and remanding the damages issue for a new trial. *See, e.g., Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12th Dist. Butler No. 81-04-0026, 1982 WL 3316 (Dec. 30, 1982). In *Combs*, the court of appeals concluded that the plaintiff had established liability for misrepresentation and breach of contract. *Id.* at *3-7. However, the court also held that the proof of lost profits was legally insufficient, and that the plaintiff failed to present a prima facie case of damages for lost profits. *Id.* at *8. In addition, the court of appeals held that the trial court erred by failing to direct a verdict on the issue of loss of goodwill. *Id.* at *9.

{¶ 63} Ultimately, the court of appeals decided to order a retrial of all issues, even

though it recognized that it could order retrial only on the issues resulting in prejudicial error (the damages). *Id.* at \*15. On further appeal, the Supreme Court of Ohio affirmed in part and reversed in part. *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241, 466 N.E.2d 883 (1984). Of particular note, the Supreme Court of Ohio held that:

> App.R. 12(D) and Civ.R. 42(B) together authorize the court of appeals to order a retrial of only those issues which resulted in prejudicial error. Inasmuch as the issue of liability has been established, the sole issue to be determined on retrial would be the amount of damages. The plaintiff-appellant herein need not retry its case as to liability of the defendant-appellee. That has been established.

*Id.* at 243-44. The Supreme Court did agree with the court of appeals that insufficient evidence had been presented to support a $900,000 verdict for compensatory damages. *Id.* at 244. However, the court disagreed with the conclusion that goodwill was not recoverable. *Id.* Accordingly, the judgment of the court of appeals was affirmed in part and reversed in part. *Id*. at 245.

{¶ 64} If we concluded that Harris had been damaged or harmed by the breach of contract (as we indicated in ¶ 46 of our opinion), we could have reversed the damages award and remanded the case for further trial. *Harris II*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, at ¶ 46. However, we did not do this. Instead, we affirmed the judgment as to the breach, and reversed as to the damages. We did not remand for a new trial. If Harris believed our opinion and our reconsideration decision were erroneous, it should have appealed these decisions to the Supreme Court of Ohio.

Because Harris failed to appeal, our decision became the law of the case and Harris, like the appellant in *Hawley*, must endure the consequences. While this decision may seem harsh, we must note that the reconsideration decision rejected Harris's contention that we failed to consider testimony from some of his damages witnesses. In this regard, we stressed that Harris failed to transmit these parts of the record, even though Harris had proper notice that SMS was submitting only a partial transcript on appeal. *Harris III*, 2d Dist. Montgomery No. 25871 (July 1, 2014), at p. 5.

**{¶ 65}** Although we cannot find grounds to deviate from the law of the case with respect to the damages verdict, we also conclude that the trial court did not abuse its discretion in finding that neither party was a prevailing party for purposes of the attorney fees provision in the contract. This was a reasonable decision, given the conflicting statements in the record and the fact that both parties succeeded in part of the case, but not in another. In this regard, we stress that SMS was not successful on its counterclaim for breach of contract and damages against Harris. *See Harris II*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, at ¶ 13 (finding that the jury had impliedly rejected SMS's counterclaim for breach of contract). As a result, both parties successfully defended against the claims of the other party, but also failed to prevail in part of their cases.

**{¶ 66}** Accordingly, Harris's Second Assignment of Error is overruled. This also resolves SMS's First Cross-Assignment of error, which is overruled.

IV. Did the Trial Court Err in Refusing to Hold a Hearing on Nominal Damages?

**{¶ 67}** Harris's Third Assignment of Error states that:

The Trial Court Erred in Failing to Provide Plaintiff-Appellant with a

Hearing for a Potential Award of Nominal Damages.

{¶ 68} Under this assignment of error, Harris contends that the trial court should have held a hearing on nominal damages because our opinion indicated that Harris did sustain damages, even though the precise amount of damages could not be ascertained. Harris also points to the statement in our reconsideration decision that "Harris should raise that issue [of nominal damages] in the trial court in the first instance * * *." *Harris III*, 2d Dist. Montgomery No. 25871 (July 1, 2014), at p. 5.

{¶ 69} We have already indicated that despite some ambiguity in our original decision, we must apply the law of the case, which would require the trial court to enter judgment, not to conduct further hearings on the issue of damages. Furthermore, our statement about the fact that the issue should be raised initially in the trial court was not an indication that a hearing on nominal damages was warranted. Instead, it was consistent with the traditional role of appellate courts, which is that we will not consider issues on appeal that are being raised for the first time and were not decided by the trial court. *See, e.g., Peoples v. Holley*, 181 Ohio App.3d 203, 2009-Ohio-897, 908 N.E.2d 517, ¶ 21, fn. 2 (2d Dist.); *State ex rel. Porter v. Cleveland Dept. of Pub. Safety*, 84 Ohio St.3d 258, 259, 703 N.E.2d 308 (1998).

{¶ 70} Because the trial court never considered the issue of nominal damages, we would normally not decide that issue on an appeal from the trial court's judgment or on reconsideration of our judgment. The proper procedure would be to raise the issue in the trial court in the first instance, and we could then consider the point on further appeal, if that occurred. Again, our statement did not indicate that a hearing was warranted; we simply said that the trial court should first consider the issue.

{¶ 71} As SMS correctly points out, Harris waived the issue of nominal damages by failing to raise it in the trial court during the first trial. *See Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 78 ("[f]ailure to raise an issue in the trial court waives the argument on appeal"); *Ziv v. Goedhart*, 2d Dist. Montgomery No. 10774, 1988 WL 107003, *2 (Oct. 13, 1988) (plaintiff's failure to request jury instruction on nominal damages waives the claim). Perhaps, we could have pointed this out when Harris raised the issue in its motion for reconsideration. However, that would have been inappropriate because the parties had never briefed the issue during the appeal.

{¶ 72} In *Bank One Dayton, N.A. v. Ellington*, 105 Ohio App.3d 13, 663 N.E.2d 660 (2d Dist.1995), we concluded that the appellants were precluded by res judicata from raising the validity of a mortgage deed because they failed to raise it during a prior appeal of a foreclosure judgment. *Id.* at 16, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), paragraph one of the syllabus. In the case before us, Harris might argue that it did raise the issue of nominal damages, on reconsideration. However, even if we had considered nominal damages at the time, we would have rejected the argument because Harris, concededly, did not ask the trial court to award nominal damages. Having failed to do so during the original trial, Harris was not entitled to have the trial court consider the issue after an appeal.

{¶ 73} We also would not have considered the nominal damages issue based on plain error. We have previously stressed that "[w]e are not likely to find exceptional circumstances where a party expresses agreement with a course of action, raises no timely objection to the outcome of that course of action in the trial court, and then takes a

contrary position on appeal." *Quill v. Troutman Ent., Inc.*, 2d Dist. Montgomery No. 20536, 2005-Ohio-2020, ¶ 44.

{¶ 74} In the trial court and on appeal, Harris has relied on *DeCastro v. Wellston City School Dist. Bd. of Edn.*, 94 Ohio St.3d 197, 761 N.E.2d 612 (2002), as authority for its entitlement to nominal damages. In *DeCastro*, the Supreme Court of Ohio held that "If a plaintiff proves breach of contract at trial but fails to prove actual damages resulting from that breach, the trial court may enter judgment for the plaintiff and award nominal damages." *Id.* at syllabus. The court observed that, as a general rule, nominal damages are appropriate where a breach of contract has been established. *Id.* at 199-200. However, the court also acknowledged that some courts had imposed certain limitations on the doctrine, including refusing "to apply the doctrine to cases on appeal where the practical result would be to reverse a case for the sole purpose of allowing a judgment for nominal damages." *Id.* at 200.

{¶ 75} The Supreme Court of Ohio agreed with these cases, and held that "unless a significant right is involved, including inequitable assessment of costs, an appellate court should not reverse and remand a case for a new trial if only nominal damages could result." *Id.*

{¶ 76} Harris does not argue that it either asked for nominal damages at trial or that it raised the issue on appeal until after our judgment reversing the damages award. As a result, we can only conclude that Harris waived its entitlement to nominal damages. The complaint did request termination of the easement agreement and injunctive relief ordering SMS to reinstall the curb cut and driveway. These claims might possibly have been "significant rights" under *DeCastro*, but Harris failed to assert them at trial. *See*

*Harris II*, 2d Dist. Montgomery No. 25871, 2014-Ohio-1906, at ¶ 56, fn.3.   Again, this resulted in waiver of the issue. And finally, there has been no inequitable assessment of costs, as the parties were ordered to spilt costs equally.   That was an appropriate finding, since neither party prevailed entirely on its claims.

{¶ 77} Based on the preceding discussion, the Third Assignment of Error is overruled.

### V.   Did the Trial Court Err in Vacating the Agreed Entry on Attorney Fees?

{¶ 78} Harris's Fourth Assignment of Error states that:

The Trial Court Erred When It Sua Sponte Vacated the Agreed Judgment Entry Filed July 29, 2013 as that Matter Was Not Before the Court for Decision.

{¶ 79} Under this assignment of error, Harris contends that the trial court erred in vacating the July 29, 2013 agreed judgment entry, as we did not remand that matter for decision, and SMS did not file a Civ.R. 60(B) motion to vacate the agreed entry.

{¶ 80} As was noted, when SMS filed its notice of appeal from the April 2013 verdict for Harris, we dismissed the appeal for lack of a final appealable order.   *Harris I*, 2d. Dist. Montgomery No. 25735 (June 18, 2013).   The dismissal was due to the fact that the attorney fee issue had not been resolved.

{¶ 81} On July 29, 2013, the parties filed an agreed entry awarding attorney fees to Harris.   The agreed entry provided, in pertinent part, that:

Plaintiff and Defendant acknowledge and agree that a Judgment Entry for Plaintiff and against Defendant in the amount of $302,800, plus

interest at the statutory rate from April 19, 2013, plus costs, was entered of record on April 24, 2013. Defendant disputes that Plaintiff should have prevailed at trial and intends to appeal the Judgment Entry in Plaintiff's favor and Plaintiff's right to attorney fees, costs, and expenses, as awarded in this Agreed Judgment Entry. Defendant agreed to the terms of this Agreed Judgment Entry for the sole purpose of conserving resources and creating a final appealable order. Therefore, Plaintiff and Defendant agree and stipulate to the following:

* * *

All of Plaintiff's claims arose out of the Easement Agreement. Because of the jury's verdict in this matter, Plaintiff is the prevailing party as contemplated by the Easement Agreement and is therefore entitled to recover from Defendant its costs and expenses of suit, including reasonable attorney fees.

July 29, 2013 Agreed Judgment Entry, pp.1-2.

**{¶ 82}** The notice of appeal filed by SMS on August 20, 2013, indicated that SMS was appealing from the judgment entered on July 29, 2013. This appeal was assigned Appellate Case No. 25871 (a different number from the original appeal, which was dismissed). Our final entry in Case No. 25871, which was issued on May 5, 2014, did not mention the judgment entry of July 29, 2013. Instead, we stated, as was noted previously, that:

Pursuant to the opinion of this court rendered on the 5th day of May, 2014, the jury's findings that SMS breached its contract with Harris are

affirmed, but its awards of damages are reversed. The matter is remanded to the trial court for entry of a judgment consistent with this court's opinion.

**{¶ 83}** Our entry did not instruct the trial court to vacate the agreed entry. We did state in our reconsideration decision that Harris should raise in the trial court "the question of whether the parties' agreement with respect to payment of attorney fees (e.g., the meaning of the term 'prevailing party,' as used in the easement agreement) is dependent on an award of damages." *Harris III*, 2d Dist. Montgomery No. 25871 (July 1, 2014), at p. 5.

**{¶ 84}** As was noted previously, while a trial court may not deviate from a mandate, it may hear and decide facts requiring resolution based on the mandate. *First Bank of Marietta*, 138 Ohio App.3d at 539, 741 N.E.2d 917, citing *Nolan*, 11 Ohio St.3d at 3, 462 N.E.2d 410.

**{¶ 85}** In view of the fact that we had reversed the damages award, the trial court was necessarily required to consider whether Harris was still the "prevailing party" for purposes of the attorney fee award. Although we did not explicitly say so in our opinion, the circumstances giving rise to the attorney fee award changed when we reversed the damages award. Thus, when the trial court concluded that neither side was a "prevailing party," the only alternative consistent with our mandate was to vacate the prior entry granting fees to Harris. Furthermore, it is clear from the agreed judgment entry that SMS agreed to it only for the purpose of permitting immediate appeal, and did not agree that Harris was the prevailing party or was entitled to attorney fees, if the jury verdict in Harris's favor failed to survive the appeal. As a result, we see no error in the trial court's decision to vacate the judgment entry. The court was required to do so, based on our mandate

and the fact that the circumstances giving rise to the attorney fee award had changed.

{¶ 86} Accordingly, the Fourth Assignment of Error is overruled.

## VI.   Did the Court Err in Ordering Payment of Costs?

{¶ 87} Harris's Fifth Assignment of Error states that:

The Trial Court Erred in Ordering One-Half of the Court Costs in this Matter to Be Paid by Plaintiff-Appellant.

{¶ 88} Under this assignment of error, Harris contends that the trial court should not have required it to pay one-half of the court costs, and should have assessed all costs to SMS.   This argument, again, is based on Harris's position that it was the prevailing party, and that the trial court should not have vacated the July 29, 2013 judgment entry. For the reasons previously discussed, the trial court did not err in its decision on costs, and Harris's Fifth Assignment of Error, therefore, is overruled.

## VII.   Cross-Assignments of Error

{¶ 89}   SMS has presented the following cross-assignments of error:

The Trial Court Erred in Finding that South Main Street Is Not the Prevailing Party and by Ordering that South Main Street Is Not Entitled to Attorney Fees, Costs, and Expenses.

The Trial Court Erred by Ordering South Main Street to Pay Fifty Percent of Costs.

{¶ 90} Under these cross-assignments of error, SMS argues that the trial court should have found that it was the prevailing party, and should not have assessed it one-

half the costs.   As was previously explained, the trial court did not err in concluding that neither side was the prevailing party.   Both sides prevailed in certain respects by defeating the other's claims, and both lost in certain respects.   As a result, requiring each side to pay half the costs was reasonable.   Accordingly, SMS's cross-assignments of error are without merit and are overruled.

## VIII.   Conclusion

**{¶ 91}** The First Assignment of Error of Harris having been sustained in part; the Second, Third, Fourth, and Fifth Assignments of Error of Harris having been overruled; and all the Cross-Assignments of Error of SMS having been overruled, the judgment of the trial court is reversed in part and affirmed in part.   The Judgment Entry of Dismissal filed on April 20, 2015 is vacated, and the case is remanded to the trial court solely for entry of a judgment consistent with this opinion.   The agreed judgment entry of July 29, 2013, is also vacated. The trial court is instructed to file a judgment entry for the defendant, adopting the jury's finding that SMS breached the contract between Harris and SMS, and adopting our conclusion that Harris failed to prove an amount of damages to award to Harris.   The trial court is further instructed to include in the entry that neither party is the prevailing party for purposes of attorney fees, and that each party is to pay fifty-percent of court costs.

. . . . . . . . . . . .

FAIN, J. and HENDRICKSON, J., concur.

(Hon. Robert A. Hendrickson, Twelfth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Richard A. Boucher
Julia C. Kolber
Thomas L. Czechowski
Hon. Richard Skelton