**PEOPLES, Appellee,**

v.

**HOLLEY, Appellant.**

[Cite as *Peoples v. Holley,* 181 Ohio App.3d 203, 2009-Ohio-897.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22296.

Decided Feb. 27, 2009.

Michael T. Columbus, for appellee.

Flanagan, Lieberman, Hoffman & Swaim and Richard Hempfling, for appellant.

BROGAN, Judge.

{¶ 1} Robert M. Holley, appellant, appeals the judgment of the Montgomery Country Common Pleas Court. The court found that he and Tanya Peoples, appellee, entered into an oral lease agreement under which he promised to pay monthly rent and she promised to allow him to live in her home. The court also

concluded that he was liable for conversion of Peoples's jewelry and her daughter's laptop computer. Holley contends that the statute of frauds bars enforcement of the parol lease. He also contends that the manifest weight of the evidence is against concluding that he is liable for conversion and is against the amount awarded in damages. We affirm the judgment.

{¶ 2} Holley began living with Peoples and her two daughters in 1997 in her home. In 2000, Peoples purchased another house. She and Holley orally agreed that he would pay her monthly rent in exchange for her allowing him to live in the new house with her. The agreement was never written down. They spent about a year renovating the new house before moving there in 2001.

{¶ 3} In 2006, Peoples filed a forcible-entry-and-detainer action against Holley. She alleged in her complaint that he was $7,000 in default under their oral lease agreement, and she sought restitution of her property. The trial court granted her restitution and scheduled for trial the issues of breach and damages.

{¶ 4} In February 2007, Peoples filed an amended complaint. She reiterated her claim that Holley had breached their oral rental agreement, which she said required him to pay half the mortgage and half the utilities while he lived in her home. And she added two claims of conversion for her missing jewelry and for her daughter's missing laptop computer, which Holley had given to the girl. She also added a claim of unjust enrichment. Peoples asked the trial court to award her $15,000 in damages.

{¶ 5} After a bench trial the following April, the trial court found these facts:

{¶ 6} "1. Plaintiff (Ms. Peoples) and Defendant (Mr. Holley) were living together at 4047 Brenton Dr., Dayton, OH 45416 for 4 years.

{¶ 7} "2. On September 25, 2006 Plaintiff was granted restitution of the premises. Plaintiff and Defendant had entered into an oral lease agreement whereby Defendant would pay one half of Plaintiff's mortgage and utilities. Defendant left the premises owing the Plaintiff approximately $7,193.96 arrears on the rent and utilities.

{¶ 8} "3. After Defendant left the premises, Plaintiff was missing approximately $7,500 in jewelry. Some were gifts from the Defendant, some were from Plaintiff's mother and some were self purchased. Defendant stated that Plaintiff's children could have taken the jewelry.

{¶ 9} "4. After Defendant left the premises, a laptop computer worth approximately $1,500 was missing. Defendant stated that he only loaned the laptop computer to Plaintiff's children.

{¶ 10} "5. Defendant provided services such as shoveling snow, yard work, painting and household repairs during his tenure on the premises. He did not babysit, pay school fees or buy groceries on a regular basis."

{¶ 11} The trial court also made these conclusions of law:

{¶ 12} "1. The Court finds that Plaintiff is the true owner of the property located at 4047 Brenton Dr., Dayton, OH 45416.

{¶ 13} "2. The Court finds that Defendant as of the trial date had not paid any monies toward the arrears. No evidence of receipts such as bills paid, was offered to offset the amount of the arrears. (See Exhibits 1 and 2.)

{¶ 14} "3. The Court finds that the Defendant was responsible for the missing jewelry.

{¶ 15} "4. The Court finds that the Defendant gave the laptop to Plaintiff's children.

{¶ 16} "5. The Court finds that Defendant has failed to provide any written documentation or receipts for his performance of the various services and household repairs.

{¶ 17} "6. The Court finds that Plaintiff is entitled to $15,000 plus interest and costs in the above captioned matter."

{¶ 18} Holley assigns two errors to the trial court's judgment. His first assignment of error states:

{¶ 19} "The court erred in enforcing terms of an oral lease agreement, as the agreement is unenforceable and barred by the statute of frauds."

{¶ 20} We begin by observing that Holley does not dispute the existence of an agreement with Peoples.[1] He does not dispute that he promised to pay what is in essence monthly rent or that he failed to keep this promise each month that he lived in Peoples's home. He argues only that the agreement is unenforceable under the statute of frauds because it does not exist in a writing. This is a question of law. "On appeal, questions of law are reviewed de novo." *Avent v. Avent*, 166 Ohio App.3d 104, 2006-Ohio-1861, 849 N.E.2d 98, at ¶ 16.

{¶ 21} In her original complaint, Peoples (the landlord) asked the trial court to order Holley (the tenant) from her home because he had failed to pay rent. The trial court granted restitution and held a bench trial on the issue of unpaid rent, which it awarded. Holley argues that the award of unpaid rent here is the result of the trial court's enforcement of a parol lease, and is contrary to the statute of

---

1. We question whether the agreement between the parties is really a lease. It looks more like a license. But the issue was never raised and we will stick to those that were.

frauds. Ohio law subjects a lease of real property to its statute of frauds in two ways. A lease may not be legally assigned or granted without a written instrument. R.C. 1335.04. And no action may be brought upon a lease agreement unless the agreement is in writing and signed by the party against whom the action is brought. R.C. 1335.05. Here, the trial court found that only an oral lease existed between Peoples and Holley. Consequently, Holley is undoubtedly correct that their agreement here is legally unenforceable.[2]

{¶ 22} Yet the trial court did not err, because the damage award is based not on the enforceability of the parol lease but on the enforceability of an implied-in-law tenancy. "It is well settled that where a purported lessee takes possession under a defectively-executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration." *Kilcoyne Properties, L.L.C. v. Fischbach*, Licking App. No. 03CA072, 2004-Ohio-7272, 2004 WL 3563912, at ¶ 40. The same is true of an unenforceable parol lease. See Restatement of Law 2d, Property (1976) 82–83, Section 2.3 and Comment *a*; *Manifold v. Schuster* (1990), 67 Ohio App.3d 251, 255, 586 N.E.2d 1142. When a tenant pays rent, accepted by his landlord, the at-will tenancy becomes a periodic tenancy. Id. The "period" depends on the orally agreed-to terms of payment. The Ohio Supreme Court held in *Lithograph Bldg. Co. v. Watt* (1917) that "[p]ossession taken and rents paid under a [parol lease for years] creates a tenancy from year to year, or month to month, dependent upon the terms as to payment of rentals." 96 Ohio St. 74, 117 N.E. 25, paragraph six of the syllabus. Similarly, in *Wineburgh v. Toledo Corp.* (1932) the court said, "A defectively executed lease for a term of five years upon monthly rental creates a tenancy in the lessee from month to month." 125 Ohio St. 219, 181 N.E. 20, paragraph one of the syllabus.

{¶ 23} Here, the trial court implicitly found that Holley agreed to pay rent monthly. Accordingly, it could find that the law created a month-to-month tenancy. The trial court then awarded Peoples the amount, according to the terms of their oral agreement, that he failed to pay in rent each month that the tenancy existed. The court did not enforce an unenforceable parol lease agreement. Rather, it enforced the terms of the implied-in-law month-to-month tenancy that existed while Holley lived in Peoples's home under a defective oral lease. Therefore, Holley's first assignment of error is overruled.

{¶ 24} Holley's second assignment of error contends:

---

2. Peoples contends that the equitable doctrine of partial performance removed the lease from the Statute of Frauds. This issue was not raised to the trial court; therefore, we will not consider it for the first time here.

{¶ 25} "The court erred in awarding appellee Peoples $15,000 in damages and finding Mr. Holley responsible for that sum, as such a finding was against the manifest weight of the evidence."

{¶ 26} Holley contends that the trial court's three-part damage award is against the manifest weight of the evidence. The manifest-weight standard of review is very deferential to a trial court. A reviewing court "has an obligation to presume that the findings of the trier of fact are correct." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24. It is not the reviewing court's proper place to weigh the credibility of witnesses and evidence presented to the trial court. Id. Thus, if a trial court's judgment is "supported by 'some competent, credible evidence going to all the essential elements of the case,'" the reviewing court ought to affirm. Id. at ¶ 26, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 27} The trial court awarded Peoples $7,193.96 in unpaid rent and utilities. Holley argues that the court's finding that he agreed to pay one-half of the mortgage and utilities is wrong. He cites Peoples's testimony that the agreement called for him to pay all the utilities, while she paid the entire mortgage. We note that Peoples's amended complaint alleges that the agreement called for him to pay half of each, just as the trial court described. Still, we agree with Holley that Peoples consistently testified that he was to pay only the utilities. Despite the court's language, though, it is clear from the record that the amount awarded reflects only the sum of the utility bills that Peoples paid during his tenancy. Thus, the award is consistent with Holley's understanding of the agreement and Peoples's consistent testimony.

{¶ 28} He next argues that the awarded amount is inaccurate because it includes bills that Peoples paid from 2003 to 2005. He points to her testimony stating that he did not stop paying until the end of 2005. He notes too her testimony that he had sometimes reimbursed her for the bills that she paid. He then points out that she did not say whether or not he had done so for any of the bills that she claimed to have paid. Finally, he points to her testimony that she was seeking payment only for 2005 and 2006.

{¶ 29} None of Holley's arguments is persuasive. Peoples submitted to the trial court a written list containing each utility bill, including the date and amount, that she paid from 2003 to 2006. While he is correct that Peoples said that he stopped paying the bills in 2005, she also testified that he had paid them only sporadically from 2003 until then. The submitted list corroborates this. With respect to her silence on whether she received reimbursement from him for any of the listed bills, we observe that there is no evidence that he did reimburse her for any of them. And, as we just noted, the list does not include every utility bill paid from 2003 to 2005, leaving open the possibility that Peoples excluded

those for which Holley had reimbursed her. Finally, given that the submitted list includes bills paid from 2003 through 2006, the trial court easily could have found that she misspoke when she said that she sought payment for the bills paid only in 2005 and 2006.

{¶ 30} Holley next points to her admission that two of the bills in the list were possibly for utilities used at another home that she owned. He says that he did not agree to pay the utilities at this other house. It is true that during cross-examination, counsel asked Peoples about two checks that she wrote to the electric company on which is written the address of her other house, and she replied that those bills "could be" for her other property. But we note that Peoples did not unequivocally agree with counsel that they were in fact for her other house. Also, she denied that any other listed bill was for the other house, and there is no evidence in the record that contradicts her. The manifest weight of the evidence before the trial court did not require it to deduct the two identified amounts, or any other amount, from its damage award. Thus, because the award for Holley's failure to pay is based on competent, credible evidence, we will not disturb it.

{¶ 31} Holley next disputes the amount awarded for Peoples's missing jewelry. He argues that there is no evidence that he took the missing jewelry. He then points out that while she claimed, in her complaint, to be missing approximately 20 pieces of jewelry, when asked at trial she could name only two items. He also points out that there is no evidence other than her testimony to support the claim.

{¶ 32} Holley has failed to overcome the presumption that the trial court's findings are correct. There is testimonial evidence in the record to support Peoples's claim to be missing $7,500 worth of jewelry, and her allegation that Holley took it. The trial court believed her testimony; no more evidence is needed. Credibility decisions are properly the trial court's, and there is no evidence in the record that contradicts the court's findings. Thus, the manifest weight of the evidence is not against the award.

{¶ 33} Finally, Holley objects to the $1,500 that the trial court awarded Peoples for the missing laptop computer. He argues that the trial court should not have awarded her damages, because the computer did not belong to her but to her daughter (which daughter is not clear).

{¶ 34} Although a parent has no legal or beneficial interest in the property of her child, the parent does have a duty to care for and manage the child's property. R.C. 2111.08. Before reaching the age of majority, a minor child has no standing to sue; consequently, a child can vindicate her legal rights

only by suing through a guardian. See *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 275, 28 OBR 346, 503 N.E.2d 717; Civ.R. 17(B).

{¶ 35} This is what the trial court could have concluded here. The ages of Peoples's two children do not appear with any certainty in the record. Holley testified that "[h]er oldest daughter is, I believe, twenty and the youngest one should be sixteen." His uncertainty combined with the fact that this case began well before he gave his testimony at trial means that the court could have concluded that the conversion claim based on the missing laptop computer was actually her daughter's. See *Day v. MacDonald* (1990), 67 Ohio App.3d 240, 248, 586 N.E.2d 1135 (finding claim brought by mother was effectively that of her minor child). And, again, there is evidence in the record to support—and little to contradict—the award. Therefore, the trial court was not wrong to permit Peoples to bring this claim, and the manifest weight of the evidence is not against the amount awarded.

{¶ 36} No part of the trial court's damage award is contrary to the manifest weight of the evidence. Therefore, Holley's second assignment of error is also overruled.

{¶ 37} The judgment of the trial court is affirmed.

Judgment affirmed.

DONOVAN, P.J., and GRADY, J., concur.