[Cite as *Neal v. Lilly*, 2020-Ohio-128.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LEO NEAL, JR. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case Nos. 28082 & 28400 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-3306 |
| | : | |
| THOMAS LILLY, et al. | : | |
| | : | (Civil Appeal from |
| Defendant-Appellee | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of January, 2020.

. . . . . . . . . . .

LEO NEAL, JR., 5174 Schuylkill Street, Columbus, Ohio 43220
        Plaintiff-Appellant, Pro Se

CRAIG T. MATTHEWS, Atty. Reg. No. 0029215, 320 Regency Ridge Drive, Dayton, Ohio 45459
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** Plaintiff-Appellant, Leo Neal, Jr., appeals pro se from a judgment awarding damages to Defendant-Appellee, Thomas Lilly, on Lilly's counterclaim for temporary injury to Lilly's real property and a judgment denying Neal's motion for a new trial. (Neal did not prevail on his claim against Lilly.) We conclude that none of Neal's assignments of error have merit, and we affirm.

## I. Facts and Procedural History

**{¶ 2}** Lilly owns four parcels of real property in Licking County, Ohio, which include a four-family residential unit, a two-family residential unit, and a single-family mobile home, all of which Lilly rented out. In 2008, Lilly agreed to sell the properties for $120,000 to Chad Jones under a land-installment contract that called for Jones to make monthly payments over ten years.

### The Ohio EPA lawsuit

**{¶ 3}** In December 2012, the Ohio Environmental Protection Agency (EPA) sent Lilly a letter that alleged continuing violations of Ohio's water pollution control laws. Evidently, the septic systems on the Licking County properties were leaking, and Lilly had twice been told earlier in the year that he had to connect to nearby sanitary sewers. In the letter, the Ohio EPA proposed a civil penalty and stated its final findings and orders, one of which was that Lilly "abandon the on-site septic system and connect the site to the sanitary sewers."

**{¶ 4}** A year later, in December 2013, the state filed suit against Lilly and Jones. Lilly decided to defend himself without an attorney. Instead, he hired Neal, an engineer, to advise him. Neal had told Lilly that Lilly did not need an attorney because he was an expert in defending against alleged EPA violations and would provide Lilly all the

necessary assistance. As the case proceeded, the state served Lilly with discovery requests. Neal advised Lilly that he did not need to respond to them, so Lilly didn't. Later, the state notified Lilly of a scheduled deposition. Neal advised Lilly that he did not need to attend, so Lilly did not appear. For Lilly's inaction, judgment was entered against him in September 2014, and in July 2015, Lilly entered into a consent agreement with the state in which he agreed to pay damages and to decommission the septic systems. Lilly and Jones agreed that Jones would decommission the septic systems in exchange for Lilly's waiving approximately six months of land-contract payments.

{¶ 5} Lilly never did connect the properties to the sanitary sewer. After the septic systems were decommissioned, the properties had no waste disposal, rendering them unusable as residential properties. Jones no longer wanted to buy the properties, so in August 2016, Lilly and Jones terminated the land contract. The properties were re-zoned commercial and listed for sale.

*Neal files suit in the municipal court*

{¶ 6} In June 2016, Neal filed a pro se complaint in the Kettering Municipal Court against Lilly and his wife, Renata ("Renata"), alleging that they had failed to pay him for his services in helping Lilly defend against the Ohio EPA's lawsuit. The complaint asserted claims for breach of contract and unjust enrichment. Renata moved to dismiss the claims against her, and Lilly filed an answer and three counterclaims. Neal moved to dismiss the counterclaims and moved for summary judgment on his claims.

{¶ 7} On October 27, 2016, the municipal court granted Renata's motion, dismissing Neal's claims against her. The court overruled Neal's motion to dismiss Lilly's counterclaims. The following month, Neal again moved for summary judgment on his

claims. He then appealed the municipal court's October 27 decision, which we dismissed for lack of jurisdiction, because it was not a final appealable order. *Neal v. Lilly*, Decision and Final Judgment Entry, 2d Dist. Montgomery No. 27385 (April 12, 2017).

{¶ 8} In June 2017, Lilly amended his answer and counterclaims. The amended counterclaims were for professional negligence, negligent misrepresentation, promissory estoppel, and fraud. Lilly alleged that because he relied on Neal's (mis)representations about his expertise in defending against alleged Ohio EPA violations, he suffered damages in excess of $25,000. Lilly also moved to transfer the case to the Montgomery County Court of Common Pleas, which the municipal court allowed.

*Discovery sanctions in the common pleas court*

{¶ 9} Shortly before the transfer, Lilly had served Neal his first set of interrogatories and requests for documents. Neal never responded. After the transfer, in October 2017, Lilly filed a motion to compel. The common pleas court granted the motion on December 8, 2017, and ordered Neal to serve "within fifteen (15) days complete responses to Defendant's First Set of Interrogatories and Request for Production of Documents." The court's order warned Neal: "Plaintiff is cautioned that failure to comply with this Order within the time provided may lead to the imposition of additional sanctions against him in accordance with Civ.R. 37(B)(1), up to and including the dismissal of his claims in their entirety and/or entry of judgment against him on Defendant's counterclaim." The deadline came and went. Finally, on December 27, Neal filed a response in which he refused to answer the interrogatories and refused to produce any documents, claiming a Fifth Amendment right against self-incrimination.

{¶ 10} Lilly moved for sanctions, asking the court to dismiss Neal's claims and

enter judgment on the counterclaims. The court held a conference with the parties on February 2, 2018, and thereafter entered an order giving Neal another chance to provide full and complete answers to Lilly's interrogatories and to provide responsive documents, this time by February 12, 2018. The order spelled out exactly what sanctions would be imposed if Neal failed to comply: "If the Court is notified that Leo Neal, Jr., has not fully complied with this Order, the Complaint will be dismissed, judgment will be entered in favor of Thomas Lilly on his counterclaims, and a hearing will be set to determine damages. Leo Neal, Jr., will not be permitted to introduce any evidence at said hearing."

{¶ 11} This time, Neal submitted timely responses, but they were insufficient. Lilly filed a notice of non-compliance with the trial court, stating that Neal had not provided full, complete, and accurate answers or full and complete documents. On March 2, 2018, the trial court imposed the sanctions on Neal that it had said it would. The court dismissed Neal's claims against Lilly, entered judgment for Lilly on his counterclaims, and ordered that a damages hearing be held at which Neal would not be permitted to introduce evidence. Neal subsequently filed a demand that damages be determined by a jury. The trial court did not respond to Neal's demand.

*The damages hearing and award*

{¶ 12} At the damages hearing, Lilly testified and submitted several exhibits, including the consent agreement in the Ohio EPA case, property tax information from Licking County, the 2015 property-tax bill, and the 2018 property-tax bill. Lilly testified that he had been told that it would cost around $50,000 to connect the properties to the sanitary sewer. He also said that when the land contract was terminated, Jones still owed around $18,000. After the hearing, Lilly filed a post-hearing brief asking for $230,675 in

total damages—$91,300 for diminution in the fair market value of the property due to Neal's failure to assist Lilly in the Ohio EPA lawsuit; $10,000 for the penalty Lilly paid in the Ohio EPA lawsuit; and $129,375 in lost rental income. For his part, Neal filed a motion asking the court to deny all Lilly's damage claims.

{¶ 13} On July 19, 2018, the trial court entered judgment awarding Lilly total damages of $68,362.28. Part of the award was for the injury to the properties caused by the decommissioning of the septic systems. The court awarded Lilly $50,000, the cost of connecting the properties to the sanitary sewer, as the cost to restore the properties to their pre-injured state. The other part of the award, $18,362.28, the amount that Jones still owed under the land contract when it was terminated, was for the loss of use of the properties from the date the land contract was terminated until the time of the judgment.

{¶ 14} On August 3, 2018, Neal moved for a new trial under Civ.R. 59. Three days later, he filed an appeal raising issues related to two of the municipal court's orders and from the common pleas court's July 19, 2018 judgment.[1] The trial court notified the parties that because Neal had appealed, the court had no jurisdiction to rule on Neal's motion for a new trial. We remanded the case for the limited purpose of allowing the trial court to decide that motion, and on April 17, 2019, the trial court overruled it. Neal separately appealed that ruling.[2]

{¶ 15} We consolidated Neal's two appeals and consider them now.

## II. Analysis

{¶ 16} Neal presents twenty-one assignments of error. Three errors are assigned

---

[1] Montgomery App. No. CA 28082.

[2] Montgomery App. No. CA 28400.

to the municipal court and eighteen are assigned to the common pleas court.

Errors assigned to the municipal court

{¶ 17} The first three assignments of error concern procedural matters in the municipal court.

I. THE KETTERING MUNICIPAL COURT ERRED BY DISMISSING DEFENDANT-APPELLEE RENAT[A] LILLY AS A DEFENDANT IN THE INSTANT CASE.

{¶ 18} Renata moved to dismiss the claims against her under Civ.R. 12(B)(6), arguing that the claims for breach of contract or unjust enrichment were not actually against her. She pointed out that none of the allegations supporting the claims refer to her; they refer only to Lilly. The municipal court agreed, finding that Neal's claims were based on an alleged oral contract that he made with Lilly and that Renata was not part of that contract.

{¶ 19} A motion to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. For a defendant to prevail, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Our review is de novo. *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661, ¶ 5 (2d Dist.).

{¶ 20} Here, the only allegations about Renata in Neal's complaint were that she was a citizen of Ohio and Montgomery County and that the Ohio EPA had filed a lawsuit against her and Lilly. The allegations in Neal's two claims concerned only Lilly. There were no facts alleged about Renata that would have entitled Neal to prevail on a claim

against her. Therefore, the municipal court properly dismissed the claims against her.

**{¶ 21}** The first assignment of error is overruled.

II. THE KETTERING MUNICIPAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO DISMISS LILLY'S COUNTERCLAIM.

**{¶ 22}** The municipal court overruled Neal's motion to dismiss Lilly's counterclaims under Civ.R. 12(B)(6). When construing a complaint, a court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756 (1988). After reviewing the counterclaims, we conclude that the factual allegations supporting Lilly's counterclaims, if true, could have entitled Lilly to relief. Therefore the municipal court properly overruled Neal's motion to dismiss.

**{¶ 23}** The second assignment of error is overruled.

III. THE KETTERING MUNICIPAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT PER CIV.R 56(A).

**{¶ 24}** Neal filed his second motion for summary judgment in the municipal court just before the case was transferred to the common pleas court. Neither court considered the motion. Neal says that the municipal court should have decided the motion before transferring the case. But he does not cite—nor have we found—any authority supporting this proposition. We note that it appears from the record that Neal never asked either court to decide the motion or refiled it in the common pleas court. Ultimately, the motion was implicitly overruled by the common pleas court when it entered final judgment in the case. We see no error.

{¶ 25} The third assignment of error is overruled.

Errors assigned to the common pleas court

{¶ 26} We consider the remaining eighteen assignments of error in four groups—the discovery sanctions, the damages hearing, the damages award, and the motion for a new trial.

The discovery sanctions

{¶ 27} The fourth, fifth, and sixth assignments of error address the trial court's imposition of sanctions for Neal's failure to respond to Lilly's discovery requests. We take up the sixth assignment of error first.

VI. THE TRIAL COURT ERRED BY VIOLATING APPELLANT'S FIFTH AMENDMENT RIGHT TO REFUSE TO ANSWER INTERROGATORIES AND TO PRODUCE DOCUMENTS.

{¶ 28} Neal says that Lilly, in his counterclaims, accused him of the crimes of practicing law and practicing engineering without licenses, while assisting Lilly in his Ohio EPA case. According to Neal, Lilly's interrogatories constituted overreaching and had no relevance to this case. As such, Neal says that he "invoked his Fifth Amendment right to refuse to answer the unrelated interrogatories and to produce unrelated documents."

{¶ 29} This assignment of error presents a mixed question of law and fact. Whether the Fifth Amendment applied to this circumstance is a question of law, but we review the trial court's implicit pretrial ruling that compelled Neal's responses for an abuse of discretion. *See Sojic v. Karp*, 2015-Ohio-3692, 41 N.E.3d 888, ¶ 22 (2d Dist.).

{¶ 30} The Fifth Amendment does not apply to "unrelated" discovery requests. "The protections of the Fifth Amendment apply in any type of proceeding—civil, criminal,

administrative, investigatory, or adjudicatory—to the extent that compelled testimony 'may tend to incriminate' the witness in a future criminal proceeding." *Id.* at ¶ 29, citing *Cincinnati v. Bawtenheimer,* 63 Ohio St.3d 260, 266, 586 N.E.2d 1065 (1992). A blanket assertion of a Fifth Amendment privilege is generally not permitted. *Id.* at ¶ 31. "The Fifth Amendment must be invoked on a question-by-question basis. 'This presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with "reasonable cause." ' " *Id.*, quoting *United States v. Bates,* 552 F.3d 472, 475 (6th Cir.2009).

{¶ 31} Here, Neal invoked a blanket assertion of his Fifth Amendment privilege. After reviewing the interrogatories and document requests, we find no justification for doing so. There was nothing in the record showing that Neal requested a hearing on this matter. Presumably, his Fifth Amendment concerns were discussed at the February conference with the trial judge. On this record, we cannot say that the trial court abused its discretion by ordering Neal to respond to Lilly's discovery requests.

{¶ 32} The sixth assignment of error is overruled.

IV. THE TRIAL COURT ERRED BY GRANTING LILLY'S MOTION FOR SANCTIONS PER CIV.R 37(A)(5)(a) WITHOUT CONDUCTING A HEARING FOR TESTIMONY AND EVIDENCE.

{¶ 33} In his appellate brief, Neal asserts that he "was never served with any discovery requests" and that he "attempted to file the discovery requests by certified mail and they were returned by the USPS as not delivered to Appellant." The record does not bear out these assertions.

{¶ 34} The record shows that Neal was served with Lilly's first set of interrogatories and requests for documents in August 2017. The following October, Lilly moved to compel responses, and in December, the trial court ordered Neal to respond within 15 days. The court warned Neal that if he did not respond, he would be sanctioned. Neal did file a timely response—one in which he refused to respond based on a claimed Fifth Amendment right against self-incrimination—which we have concluded was not a valid basis for Neal's refusal. So Lilly moved for sanctions against Neal based on his failure to comply with the discovery order. After a conference, the trial court gave Neal another chance and again ordered him to provide full and complete answers to the interrogatories and to provide responsive documents. The trial court warned Neal that if he did not comply, he would be sanctioned. This time, Neal did file some responses, but they were not complete.

{¶ 35} Plainly, Neal knew all about Lilly's discovery requests, and the trial court told Neal what would happen if he failed to comply with the discovery order. No hearing was necessary. Neal should not and could not have been surprised when the court sanctioned him for failing to comply with its discovery order.

{¶ 36} The fourth assignment of error is overruled.

V. THE TRIAL COURT ERRED BY DISMISSING APPELLANT'S COMPLAINT WITH PREJUDICE, BY GRANTING LILLY'S CLAIMS AND BARRING APPELLANT FROM ENTERING EVIDENCE AT TRIAL FOR ALLEGED DAMAGES.

{¶ 37} In this assignment of error, Neal challenges the sanctions that the trial court imposed: the dismissal of his claims, the entry of judgment on Lilly's counterclaims, and the disallowance of presenting evidence at the damages hearing.

{¶ 38} Civ.R. 37 authorizes a trial court to impose the sanctions that the court here imposed. The rule provides that if a party fails to comply with a discovery order, a court may "[d]ismis[s] the action or proceeding in whole or in part," Civ.R. 37(B)(1)(e); "[r]ende[r] a default judgment against the disobedient party," Civ.R. 37(B)(1)(f); "[p]rohibi[t] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," Civ.R. 37(B)(1)(b). As we have said, that the trial court here imposed these sanctions could not have surprised Neal. The court twice warned Neal in its discovery orders what would happen if he failed to comply. Neal fails to convince us that the court abused its discretion by imposing these sanctions on him.

{¶ 39} The fifth assignment of error is overruled.

The damages hearing

{¶ 40} The seventh, eighth, ninth, and tenth assignments of error concern procedural aspects of the damages hearing.

VII. THE TRIAL COURT ERRED BY FAILING TO CONDUCT A JURY TRIAL DEMANDED BY APPELLANT FOR ALLEGED DAMAGES IN THE INSTANT CASE.

{¶ 41} After the trial court ordered the damages hearing, Neal filed a motion asking that the matter be put before a jury. The trial court never ruled on the motion, implicitly overruling it. We note that in its decision overruling Neal's motion for a new trial, the court concluded that Neal had waived his right to a jury trial on the issue of damages because he had failed to object at the start of the damages hearing and had participated in the hearing. We agree. *See Goddard v. Goddard*, 192 Ohio App.3d 718, 2011-Ohio-680, 950 N.E.2d 567, ¶ 19 (4th Dist.) ("a party may not stand idly by while the court conducts a

bench trial and then complain on appeal that the court should have held a jury trial");
*Nenadal v. Landerwood Co.*, 8th Dist. Cuyahoga No. 65428, 1994 WL 189375 (May 12, 1994) (holding that the plaintiffs waived their right to a jury trial, even though a jury demand was endorsed on the complaint, as the plaintiffs did not object prior to or at the hearing); *Sydnor v. Qualls*, 2016-Ohio-8410, 78 N.E.3d 181, ¶ 46-47 (4th Dist.) (holding that the trial court did not abuse its discretion in overruling the appellant's motion for a new trial under Civ.R. 59(A)(1) where a bench trial was held and the appellant failed to object to the absence of a jury).

**{¶ 42}** The seventh assignment of error is overruled.

VIII. THE TRIAL COURT ERRED BY FAILING TO PLACE LILLY UNDER OATH BEFORE TESTIMONY AT THE TRIAL FOR ALLEGED DAMAGES IN THE INSTANT CASE.

**{¶ 43}** The trial court also addressed the matter raised in this assignment of error in its decision denying Neal a new trial. Citing page seven of the hearing transcript, the court said that "[t]here is no merit to Plaintiff[']s assertion that Defendant's testimony was not given under oath, as Defendant was sworn in prior to giving any testimony." After reviewing the transcript, we agree.

**{¶ 44}** The eighth assignment of error is overruled.

IX. THE TRIAL COURT ERRED BY DENYING APPELLANT THE OPPORTUNITY TO REVIEW LILLY'S EVIDENCE PRIOR TO TRIAL.

**{¶ 45}** During the damages hearing, Neal told the trial court that he had not been provided with copies of any of Lilly's exhibits, including the consent order entered in the Ohio EPA lawsuit. Neal asked for a 15-minute continuance to review the consent order,

saying that it was the first time that he had seen it. The trial court told him that he could have asked for it in discovery and that the court assumed he was prepared. The court gave Neal a moment to look at the document but denied a continuance. At the end of the hearing, Neal objected to the admission of Lilly's exhibits, because they had not been provided to him. The court overruled the objection. Before doing so, the court asked Neal if he had requested them, and Neal replied that he was not aware they were going to be used in the case. Lilly's attorney told the court that Neal never requested copies.

{¶ 46} We see no evidence in the record that the trial court denied Neal the opportunity to review the exhibits before the damages hearing. The fault appears to lie with Neal himself.

{¶ 47} The ninth assignment of error is overruled.

X. THE TRIAL COURT ERRED BY ALLOWING LILLY TO FILE A POST TRIAL MEMORANDUM TO THE PREJUDICE OF APPELLANT.

{¶ 48} The trial court also addressed the matter raised in this assignment of error in its decision denying Neal a new trial. Citing the transcript of the damages hearing, the court noted that "the Court requested both parties file written arguments regarding the issue of damages; therefore it was proper for Defendant to file a post-hearing brief." We agree. At the end of the hearing, the court told the parties: "Court will take the matter under advisement. If you'd like to file written arguments, you can file those arguments 14 days from today. Let's make it 14 days from Friday, which will be May the 25th, any written arguments will be due." (Tr. 78). Neal asked, "So May 25th, I can—" and the court cut him off with, "Any written briefs, not evidence—any written argument as to the issue of damages only. That does not include evidence, sir." (*Id.* at 79).

{¶ **49**} Neal had the same opportunity as Lilly to file a post-hearing brief, and he fails to convince us that Lilly should not have been allowed to file one.

{¶ **50**} The tenth assignment of error is overruled.

The damages award

{¶ **51**} The eleventh through twentieth assignments of error focus on the damages award itself. Before delving into the assignments of error, it will be helpful to define the scope of the damage question.

{¶ **52**} Lilly's counterclaims included tort claims for professional negligence and negligent misrepresentation. Generally, in tort, "[i]n order to hold a defendant liable for a plaintiff's injuries or losses, the plaintiff must prove that the defendant negligently committed some act or omission that caused the plaintiff's injury or loss." *Baldwin's Ohio Practice Tort Law*, Causation, Section 3:1 (2d Ed.). *See also Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 48, quoting *Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984) ("A cause of action for negligence requires the claimant to prove "the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom."). The trial court's entering judgment on Lilly's counterclaims established that Neal's conduct was wrongful and that this conduct injured Lilly, cementing a causal connection between Neal's conduct and Lilly's damages. In other words, the entry of judgment on the counterclaims established that Lilly suffered damage-in-fact.

{¶ **53**} But "[t]he inquiry into whether there is damage-in-fact is distinct from the inquiry into actual damages: the '[f]act of damage pertains to the existence of injury, as a predicate to liability; actual damages involves the quantum of injury, and relate to the

appropriate measure of individual relief.' " *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 34, quoting *Martino v. McDonald's Sys., Inc.*, 86 F.R.D. 145, 147 (N.D.Ill.1980). This is why the trial court held a damages hearing. The hearing was an inquiry into Lilly's actual damages to determine the measure of relief to which Lilly was entitled. In determining Lilly's damages, the trial court applied the rule established in *Ohio Collieries Co. v. Cocke*, 107 Ohio St. 238, 140 N.E. 356 (1923): for temporary injury to real property, a plaintiff is entitled to recover reasonable restoration costs and compensation for loss of use of the property between the time of injury and restoration.

{¶ 54} Based on the evidence presented, the trial court determined that the appropriate measure of Lilly's relief was $68,362.28. Part of the court's damages award was for injury to the property, i.e., the decommissioning of the septic systems. The court found that this was a temporary injury and that the reasonable cost of restoration was the amount that it would cost to connect the properties to the sanitary sewers. Lilly had testified that doing so would cost $50,000, so that was the amount that the court awarded for the injury. The other part of the court's award was for the loss of use of the property caused by the injury. The court found that the reasonable value of the loss of use was the balance owed under Lilly's land contract with Chad Jones when the contract was cancelled, which the court determined was $18,362.28. Lilly accepted the court's damage determination; Neal has not. We turn now to Neal's objections.

XI. THE TRIAL COURT ERRED BY FILING FINDINGS OF FACT AND CONCLUSIONS OF LAW THAT ARE NOT SUPPORTED BY THE EVIDENCE IN THE RECORD.

{¶ 55} In the eleventh assignment of error, Neal cites numerous (roughly 14, depending on how you count them) findings of fact and conclusions of law made by the trial court that he alleges the evidence did not support. We understand him to be challenging the sufficiency (as opposed to the manifest weight) of the evidence, and we are mindful that "[o]n appeal, questions of law are reviewed de novo." (Citation omitted.) *Avent v. Avent*, 166 Ohio App.3d 104, 2006-Ohio-1861, 849 N.E.2d 98, ¶ 16 (6th Dist.). *Accord Peoples v. Holley*, 181 Ohio App.3d 203, 2009-Ohio-897, 908 N.E.2d 517, ¶ 20 (2d Dist.) (quoting the same).

{¶ 56} We have reviewed each of the findings of fact and conclusions of law that Neal cites and conclude that almost all of them were either not relevant to the trial court's damages determination or were supported by the evidence (or both). The only contention that merits discussion is the final one in which Neal contends that the trial court erred by applying the *Ohio Collieries* damages rule for temporary injury to real property.

{¶ 57} The plaintiffs in that case owned 20 acres of land, and the defendant coal company owned the coal underneath the land. The plaintiffs sued the coal company because its mining operation had allegedly caused subsidence that caused the plaintiff's house to settle and become out of plumb, and the property's well to go dry. The court noted that the potential damages for this type of injury to property depend on whether the injury is permanent or temporary. A temporary injury can be repaired, and the recoverable damages were the cost to repair. The measure of damages, said the court, was the cost of restoring the property, unless that cost exceeded the difference in the value of the property before and after the injury. The court determined that the injury to the plaintiffs' property in *Ohio Collieries* was temporary, as the value of the property had not been

totally destroyed, since the plaintiffs were still using it. Therefore, the damages that the plaintiffs could recover were found to include the cost of restoration.

{¶ 58} The facts in the case before us are analogous to those in *Ohio Collieries*. Neal's wrongful conduct injured Lilly's properties by causing their septic systems to be decommissioned, leaving the properties with no waste disposal. This was a temporary injury, because waste disposal could be restored to the properties by connecting the properties to the sanitary sewers. We do not think that the trial court erred by applying the *Ohio Collieries* damage rule for temporary injury to real property.

{¶ 59} Neal also argues that the *Ohio Collieries* rule applies only if the injured property has actually been restored. We disagree. We see nothing in the court's decision, or in subsequent decisions, that would require actual restoration. Indeed, the court's language suggested just the opposite. The court wrote that "*[i]f restoration can be made*, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration." (Emphasis added.) *Ohio Collieries*, 107 Ohio St. 238, 140 N.E. 356, syllabus. To recover damages, a plaintiff need show only that the property can be restored and what the reasonable cost of restoration is.

{¶ 60} The eleventh assignment of error is overruled.

XII. THE TRIAL COURT ERRED BY GRANTING DAMAGES BECAUSE LILLY WAS NOT THE OWNER OF THE SUBJECT PROPERTY WHEN THE SEPTIC SYSTEMS WERE DECOMMISSIONED BY THE SUBJECT PROPERTY'S OWNER.

{¶ 61} The question of ownership is not relevant to the damage determination. The

entry of judgment on Lilly's counterclaims established that Neal's wrongful conduct injured Lilly, entitling Lilly to relief.

{¶ 62} The twelfth assignment of error is overruled.

XIII. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE DAMAGES BECAUSE LILLY ENTERED INTO A CONSENT ORDER THAT ORDERED THE SEPTIC SYSTEMS SERVING THE SUBJECT PROPERTY BE DECOMMISSIONED BY CHAD JONES THE OWNER OF THE SUBJECT PROPERTY.

{¶ 63} Neal argues that Lilly was not the property owner and that the injury to the property was caused by the actual owner, Chad Jones, in an effort to comply with the consent order that Lilly agreed to in order to settle the Ohio EPA's lawsuit over the properties' septic systems, which ordered the decommissioning. Neal says that Lilly agreed to the consent order before the injury to the property occurred.

{¶ 64} As we have said, ownership is not relevant, and that Neal caused Lilly injury has been established. The issues raised in this assignment of error are not relevant to the question of Lilly's actual damages.

{¶ 65} The thirteenth assignment of error is overruled.

XIV. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE DAMAGES NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 66} A review on the manifest weight of evidence is conducted this way: " 'The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that

the [judgment] must be reversed and a new trial ordered.' " *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

{¶ 67} Neal fails to show that the damages award was against the manifest weight of the evidence. Most of the evidentiary issues that Neal raises in this assignment of error were not relevant to the trial court's damages determinations, and other issues that he raises we have already addressed.

{¶ 68} The fourteenth assignment of error is overruled.

XV. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE DAMAGES BECAUSE LILLY FAILED TO MITIGATE ALLEGED DAMAGES.

{¶ 69} Neal argues that Lilly should have mitigated his damages by connecting the properties to the sanitary sewers.

{¶ 70} The doctrine (principle) of mitigation of damages " 'is intended to prevent an inclusion in the damage award of damages that could have been avoided by reasonable affirmative action by the injured party without substantial risk to such party.' " (Citation omitted.) *Cavins v. S & B Health Care, Inc.*, 2015-Ohio-4119, 39 N.E.3d 1287, ¶ 116 (2d Dist.), quoting *Czarnecki v. Basta*, 112 Ohio App.3d 418, 423, 679 N.E.2d 10 (8th Dist.1996). The trial court here found that the property was injured when the septic system was decommissioned because it left the residential property without proper waste disposal. The only part of the damages award that Lilly could have avoided by connecting the property to the sanitary sewer was the amount for the cancelled land contract. But we

do not think that it would be reasonable to require Lilly to spend $50,000 to connect to the sewer in order to avoid losing $18,362.32 under the land contract.

**{¶ 71}** The fifteenth assignment of error is overruled.

XVI. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE DAMAGES THAT ARE DISPROPORTIONATE TO THE MARKET VALUE OF THE SUBJECT PROPERTY THEREBY CREATING A WINDFALL THAT IS CONTRARY TO LAW.

**{¶ 72}** Neal argues that the damages award was grossly disproportionate to the market value of the property and was contrary to the *Ohio Collieries* damage rule.

**{¶ 73}** " 'It is fundamental to the law of remedies that parties damaged by the wrongful conduct of others are entitled to be made whole. * * * The injured party should not receive a windfall; in other words, the damages awarded should not place the injured party in a better position than that party would have enjoyed had the wrongful conduct not occurred.' " *PAG Holdings v. Love*, 2nd Dist. Greene No. 12CA0012, 2012-Ohio-3388, ¶ 8, quoting 30 Ohio Jurisprudence 3d, Damages, Section 2, at 11-12 (2009).

**{¶ 74}** *Ohio Collieries* holds that if an injury to property is "susceptible of repair, the measure of damages is the reasonable cost of restoration * * * unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure." *Ohio Collieries,* 107 Ohio St. at 248-249, 140 N.E. 356. Here, according to the 2014 tax bill that Lilly presented at the hearing, the market value of the property before the injury was $207,900. According to the 2017 tax bill that Lilly also presented, the market value after the injury fell to $116,600, a $91,300 decline. The $68,362.28 that the trial court awarded

Lilly was significantly less than the decline in market value. We fail to see how Lilly was put in a better position.

{¶ 75} The sixteenth assignment of error is overruled.

XVII. THE TRIAL COURT ERRED BY GRANTING EXCESSIVE DAMAGES FOR ALLEGED INJURY TO THE SUBJECT PROPERTY CAUSED BY THE ILLEGAL ACTIONS OF THE SUBJECT PROPERTY'S OWNER.

{¶ 76} Neal contends that the decommissioning of the septic systems was required by the consent order and was a permanent—not temporary—injury to the property. The septic systems were ordered decommissioned, says Neal, because Lilly and Jones were operating them in violation of the Ohio Clean Water Act, so the injury that the decommissioning caused to the property was caused by their illegal conduct.

{¶ 77} Again, the cause of the injury is not at issue. As we have explained, the entry of judgment on the counterclaims conclusively established that Neal's wrongful conduct caused the injury to the property.

{¶ 78} The seventeenth assignment of error is overruled.

XVIII. THE TRIAL COURT ERRED BY GRANTING DAMAGES FOR CLAIMS NOT CONTAINED IN LILLY'S COUNTERCLAIM, AMENDED COUNTERCLAIM OR POST TRIAL MEMORANDUM.

{¶ 79} Neal argues that Lilly did not claim damages for connecting the properties to the sanitary sewer or for lost use of the property.

{¶ 80} The demand in Lilly's counterclaim asked for "compensatory damages in excess of $25,000 for the claims raised in this Counterclaim, *including, but not limited to*"

those stated explicitly as well as for "costs and such further relief as may be necessary and just." (Emphasis added.). The trial court's job was to determine the appropriate measure of relief. Evidently, the court determined that to make Lilly whole it was necessary and just to award him the cost to connect the properties to the sanitary sewer and an amount for his loss-of-use. We think that the court's determination was reasonable.

{¶ 81} The eighteenth assignment of error is overruled.

XIX. THE TRIAL COURT ERRED BY APPEARING TO AWARD EXCESSIVE DAMAGES WHILE UNDER THE INFLUENCE OF PASSION OR PREJUDICE.

{¶ 82} Neal points to no evidence in the record that shows the trial court acted under passion or prejudice, let alone that the court was influenced by either, and we do not see any such evidence.

{¶ 83} The nineteenth assignment of error is overruled.

XX. THE TRIAL COURT ERRED BY APPLYING AN OHIO SUPREME COURT RULE FOR ALLEGED DAMAGES THAT IS NOT APPLICABLE IN THE INSTANT CASE.

{¶ 84} In this assignment of error, Neal again argues that the trial court erred by applying the damage rule from *Ohio Collieries*. We have already concluded that the trial court did not err by applying this rule.

{¶ 85} The twentieth assignment of error is overruled.

The motion for a new trial

{¶ 86} Neal assigns the final error to the trial court's decision to overrule his motion

for a new trial:

XXI. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION BASED ON CIV.R. 59(A) TO SET ASIDE ALL THE JUDGMENTS IN THE INSTANT CASE AND TO SET A NEW JURY TRIAL ON THE MERITS OF THE INSTANT CASE.

{¶ 87} Neal's supporting argument here is a list of 16 "facts" that he says the trial court failed to find in its decision. Civ.R. 59(A) governs motions for a new trial and enumerates the grounds on which a new trial may be granted. Neal does not cite this rule (or any legal authority) in his argument.

{¶ 88} All of the issues that Neal's list of "facts" raises are also raised in other assignments of error. We have already considered these issues and found none with merit.

{¶ 89} The twenty-first assignment of error is overruled.

### III. Conclusion

{¶ 90} We have found no merit in any of Neal's assignments of error and have overruled each of them. The judgments of the trial court are affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Leo Neal Jr.
Craig T. Matthews
Hon. Mary L. Wiseman